# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 9, 2005          Decided January 13, 2006
                                Reissued January 18, 2006

No. 04-3064

UNITED STATES OF AMERICA,
APPELLEE

v.

CALVIN MCCANTS,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00130-01)

———

*Ketanji Brown Jackson*, Assistant Federal Public Defender, argued the cause for appellant. With her on the brief was *A.J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Lisa H. Schertler*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, *John R. Fisher*, Assistant U.S. Attorney at the time the brief was filed, *Elizabeth Trosman* and *Virginia Cheatham*, Assistant U.S. Attorneys. *Roy W. McLeese, III*, Assistant U.S. Attorney, entered an appearance.

Before: RANDOLPH and GRIFFITH, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*:  Calvin McCants pled guilty to possessing false document-making implements in violation of 18 U.S.C. § 1028(a)(5) (2000).  The Presentence Investigative Report ("PIR") prepared by the United States Probation Office contained several highly contested factual issues.  At sentencing, however, the District Court made no specific factual findings with respect to matters in dispute between the defendant and the prosecutor.  At the conclusion of sentencing, the prosecutor inquired:  "[A]s a housekeeping matter . . . do I understand the Court to have adopted the presentence report with respect to our sentencing guidelines. . . ?"  The trial judge replied, "That is correct."  On appeal, the Government contends that the District Court's last minute "adoption" of the PIR amounted to the required "findings" by the court mirroring those stated in the PIR.  We disagree.

Federal Rule of Criminal Procedure 32(i)(3)(B) states that a sentencing court

> must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.

Because the District Court failed to follow the strictures of Rule 32, we will remand the case for resentencing accompanied by the required findings of fact.

## I. BACKGROUND

On March 15, 2002, the Government issued a 15-count indictment against McCants, charging him with conspiracy to defraud a number of financial institutions and unlawfully transfer various means of identification. The indictment alleged a number of specific offenses, several of which involved presenting misappropriated credit histories and false identifications to financial institutions to obtain fraudulent loans. Unnamed co-conspirators actually obtained the loans, according to the indictment, but McCants supplied them with stolen credit histories and accompanying identification documents. McCants was also charged with independent substantive offenses. Relevant to this appeal is Count 13 of the indictment, which accused McCants of violating 18 U.S.C. § 1028(a)(5) by knowingly possessing tools used for the intentional production of false identification documents.

Appellant reached an agreement with the Government to plead guilty to Count 13. As part of that agreement, McCants acquiesced to a factual statement of his offense, which was appended to the plea. The factual statement described the fruits of four Government searches targeting McCants. In essence, it provided an inventory of the illicit supplies discovered in McCants' possession. These items are not in dispute.

The United States Probation Office released an initial PIR on December 23, 2003. Both parties took issue with its findings. The prosecution claimed that the report understated the amount of loss attributable to McCants, failed to showcase evidence of McCants' use of "sophisticated means" to execute the offense, and did not grasp the seriousness of the offense, which warranted an additional upward departure. In particular, the Government described the extensive holding of document-making paraphernalia recovered in the four searches described in McCants' offense statement. The Government then alleged that McCants sold two fake credit cards to Rickey Buchanan –

a prosecution informant who bought phony documents from McCants and led the ring of individuals who perpetrated the bank fraud operations – in "controlled buys" orchestrated by federal law enforcement agents. The Government also linked McCants to 283 counterfeit or "obliterated" credit cards, which the prosecution characterized as "access devices" for purposes of United States Sentencing Guidelines § 2B1.1. Further, the Government attributed to McCants $110,252 in losses stemming from the bank fraud scheme, which the Government accused McCants of facilitating; in connecting McCants to the larger scheme, the memorandum asserted that he "shar[ed] in the loan proceeds." Government's Memorandum in Aid of Sentencing and Mot. for Upward Departure at 18, *United States v. Calvin McCants*, Cr. No. 02-130 (D.D.C. filed Feb. 4, 2004). Finally, the Government referred to identifications and credit cards in the name of "Celvin McCants" found in appellant's possession, and asserted that "[h]e also obtained bank loans in that name – loans which he did not repay." *Id.* at 19. Those loans added another $32,949.57 to the Government's proposed loss calculation. On top of the Guidelines score reflecting this proposed loss attribution, the Government urged the District Court to increase McCants' offense level by two pursuant to United States Sentencing Guidelines § 2B1.1(b)(8)(C), because McCants utilized "sophisticated means" to perpetrate his crime. The Government also urged a two-level upward departure, arguing that the calculated loss amount "grossly understate[d] the seriousness of McCants' criminal conduct." *Id*. at 22.

Attached to the Government's sentencing memorandum were transcripts of a series of telephone conversations between McCants and Buchanan. McCants' dealings with Buchanan formed the basis of the Government's theory linking McCants to the bank frauds. The Government therefore relied heavily on these conversations to establish the scope of McCants' culpability. In particular, the Government has highlighted the following information discerned from the transcripts: McCants

claimed that an associate could acquire "dossiers," which provide "a whole log on anybody you want"; McCants priced a package of materials, apparently including military identification and driver's licenses, in which "everything looked legal," at $3,000; McCants reported that his associate, "Doc," possessed fabricated licenses intended for Buchanan, and that, with respect to one of Buchanan's cohorts, "we put your boy's face on" the licenses. Finally, the Government attached a second addendum with an itemized list of the credit cards uncovered during searches of McCants' addresses.

The defense also lodged objections to the initial PIR and filed a responsive memorandum with the trial court. First, it challenged the Government's calculation of the amount of loss attributable to McCants, and offered a counter-calculation. In particular, McCants posited that the total loss for which he was responsible "is $136,500, and in the worse [sic] case would be no more than $187,692.05." Defendant's Mot. for Consideration for Downward Departure and Opp. to the Gov'ts Memorandum in Aid of Sentencing and Mot. for Upward Departure at 2, *United States v. Calvin McCants*, Cr. No. 02-130 (D.D.C. filed Feb. 23, 2004). The difference in loss calculation was critical to determining McCants' sentence, because losses over $200,000 increase the base level for McCants' offense of conviction by 12 points, whereas losses between $120,000 and $200,000 increase the base level by only 10 points. *See* U.S.S.G. § 2B1.1(b)(1)(F), (G) (2003).

To scale back the calculation, McCants first argued that he possessed only 273 "access devices," not the 283 cited by the Government, in part because "obliterated" cards – *i.e.*, cards on which the identifying information has been filed off – could not count. McCants also denied responsibility for the two cards allegedly sold in the controlled buys, maintaining that he never actually transmitted the cards to Buchanan or received any money for them. Next, the defense strongly opposed penalizing

McCants for any of the bank fraud schemes perpetrated by Buchanan and his crew. McCants attacked Buchanan's credibility and emphasized the financial independence of the two men, insisting that McCants received a flat fee for his product and no portion of Buchanan's proceeds. McCants also countered the Government's support of an adjustment for his alleged use of "sophisticated means," arguing that the false document-making implement statute already contemplates the use of sophisticated equipment.

In May 2004, the Probation Office issued a final PIR. It maintained the view that Buchanan's bank fraud operation was "relevant conduct," *see* U.S.S.G. § 1B1.3, for purposes of devising McCants' sentence. The PIR found that appellant "engaged in a scheme which defrauded banks and lending institutions of over $100,000." Presentence Investigative Report ¶ 10, *United States v. Calvin McCants*, Cr. No. 02-130 (D.D.C. May 6, 2004) ("PIR"). It further found that McCants "would typically receive a 'one-third payment' for his activities, either at the time he produced a loan package . . . for an unnamed coconspirator or after a fraudulent loan was obtained [with proceeds from the loan]." *Id.* ¶ 13 (brackets in original). An additional $32,949 was assigned to McCants because "the government indicated that the defendant is responsible for two defaulted loans [using the name Celvin McCants]." *Id.* ¶ 33 (brackets in original). In sum, the PIR calculated that $289,701.15 in loss was attributable to McCants.

At a series of sentencing hearings, the Government presented testimony from two witnesses: Secret Service Special Agent Jeffrey Porter, who had investigated McCants, and Buchanan. Porter described the trove of equipment, credit histories, and counterfeit documents uncovered during the successive raids on McCants' properties. Buchanan testified that appellant would provide him with the documents needed to commit bank fraud, including credit histories and other financial

information, as well as identification documents manufactured with pictures of the individuals Buchanan dispatched to the lending institutions. He further recalled that McCants advised him to avoid using a particular identity more than three or four times so as to avoid attracting suspicion, and to ensure that his cohorts dressed appropriately when they impersonated legitimate loan-seekers. On cross-examination, Buchanan reported the pricing scheme McCants imposed. Buchanan claimed that prices reflected factors like what kind of document was being transacted, its quality, and even McCants' mood on a given day; but Buchanan never alluded to dividing profits from particular acts of bank fraud or any other fraudulent venture.

After the testimony and oral proffers by each side's counsel, the District Court announced its ruling. It began by noting that, "under the revised presentence report, the total offense level would be 20." Tr. 5/11/04 at 7. The court then queried "are we all in agreement on that," and the prosecutor responded: "We all agree that that's what the presentence report says, but I think both [defense counsel] and I have disagreements as to that being applicable." *Id.* The court replied that it was using that level as "the basic figure." *Id.*

The court then commenced its analysis. It noted that "one of the issues – and the Court is going to file a memorandum . . . is whether or not the defendant in this matter used a sophisticated means in order to – in the commission of the offense." *Id.* at 8. The court observed that the statutory offense covers possession of document-making implements. It then concluded:

> Because the sentencing guidelines seem to refer to the sophisticated means used in covering up or hiding an offense or relating to the commission of the offense charged, and I guess an argument can be made as to when you look at the offense charged, it seems to be possession, whether that would cover it.

> I have considered that, and the Court is satisfied and will rule that these were sophisticated means and that the offense level should be enhanced by two.
>
> This brings then the total offense level to 22, criminal category III.

*Id.* at 9. The court further indicated that a sentencing memorandum would be forthcoming. The court also emphasized the gravity of producing false military identification, which had the potential to threaten national security; in light of this concern, the court enhanced the offense level by two more points. After each side's counsel addressed McCants' background and character, the court sentenced McCants to 78 months in prison, followed by three years of supervised release, as well as $77,852.15 of restitution. *Id.* at 36. The District Court never made findings to resolve the factual issues between the parties over disputed portions of the PIR. Nor did the court ever issue the promised memorandum explaining its decision.

After the District Court pronounced its sentence, the prosecutor inquired: "[A]s a housekeeping matter . . . do I understand the Court to have adopted the presentence report with respect to our sentencing guidelines, with the additional two provisions, that being the upward adjustment for sophisticated means, and a two-level upward departure?" *Id.* at 41. The court replied, "That is correct." *Id.*

## II. ANALYSIS

As noted above, Federal Rule of Criminal Procedure 32(i)(3)(B) (2004) ("Rule 32") provides that a sentencing court

> must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will

not affect sentencing, or because the court will not consider the matter in sentencing.

The Rule further states that the prescribed determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons. FED. R. CRIM. P. 32(i)(3)(C). We agree with appellant that the District Court's failure to adhere to the commands of Rule 32 requires a remand of this case.

Appellant argues that the District Court transgressed Rule 32 by incorporating the PIR's recommended sentence as its "basic figure" without ever making specific factual findings. In particular, McCants points out that the District Court made no findings on (1) the existence and scope of McCants' facilitation of the Buchanan conspiracy, (2) McCants' responsibility for the fraudulent loans allegedly obtained by "Celvin McCants," and (3) the number of "access devices" McCants possessed. McCants argues that, since the PIR contained factual assertions that were hotly contested by the defendant and the prosecutor, Rule 32 obligated the trial court to confront the factual disputes and resolve them on the record. We agree. Key elements of the PIR's calculation rely on contentious assumptions. Those assumptions may be valid, but Rule 32 requires the sentencing court to spell out its findings on disputed factual matters. Its failure to do so here impels us to remand for resentencing.

The District Court's failure to resolve factual contests violated Rule 32. While we have refrained from mandating a "bright line rule that every failure of literal compliance with Rule 32 requires remand for resentencing," we have remanded when "the record does not reveal the District Court's finding on a serious and potentially pivotal sentencing factor." *United States v. Chaikin*, 960 F.2d 171, 175 (D.C. Cir. 1992). The fact-finding requirement "serves more than the purely ministerial function" of transmitting accurate information to the Bureau of Prisons and Parole Commission; more importantly, "it protect[s]

a defendant's due process rights to be sentenced on the basis of accurate information, and facilitates appellate review by furnishing a clear record of the resolution of disputed facts." *United States v. Graham*, 83 F.3d 1466, 1477 (D.C. Cir. 1996) (internal quotations and citations omitted) (alterations in original). As we have noted, sentences under the Guidelines "'must be supported by reasons,'" and that means "'something more than conclusions – a distinction important not only to the defendant whose future is at stake but also to the appellate process.'" *United States v. Childress*, 58 F.3d 693, 723 (D.C. Cir. 1995) (quoting *United States v. Edwards*, 945 F.2d 1387, 1399 (7th Cir. 1991)).

This case underscores the need for adherence to Rule 32. The issues presented by McCants' sentencing raise inescapable controversies. The appellate court is not in a position to resolve those controversies in the first instance. Nor are we equipped to discern the District Court's view of the facts. McCants has pointed to several alleged defects with his sentence. All of them turn on issues of fact. For us to determine whether the sentencing court properly calculated McCants' sentence, we need to know what factual propositions it credited. Were there no dispute as to any of the operative facts, we might be able to infer the trial court's view. But, as we discuss below, the record assembled before the District Court does not self-evidently resolve these quandaries. And the District Court's assurance, in response to the prosecutor's "housekeeping" query, that it intended to adopt the PIR does not resolve the underlying factual controversies. McCants has called into question the evidentiary basis for several of the PIR's recommendations. Thus, this is not a case in which the findings in the PIR are "'so clear that the reviewing court is not left to "second-guess" the basis for the sentencing decision.'" *Graham*, 83 F.3d at 1477 (quoting *United States v. Carreon*, 11 F.3d 1225, 1231 (5th Cir. 1994)). The record before us in this case is inadequate for appellate review.

McCants has pointed to four sentencing issues with respect to which the underlying factual predicate is unclear. We emphasize that our brief discussion of these disputes is meant only to highlight the factual issues whose resolution must precede a determination of McCants' sentence. In other words, we address these matters only to explain why they remain obscure. We do not attempt to resolve the factual issues, or even to offer interpretive guidance to the District Court. "We only direct the Court to enter the findings required by Rule 32 or state its non-reliance on the contested matter[s]." *Chaikin*, 960 F.2d at 175.

Chief among the controversies left unaddressed by the District Court was the scope of McCants' "relevant conduct," and, in particular, whether it extends to the bank fraud operation run by Buchanan. Under the Sentencing Guidelines, an offender's relevant conduct will encompass "all acts and omissions committed, aided, abetted, counseled . . . . or willfully caused by the defendant," U.S.S.G. § 1B1.3(a)(1)(A) (2003), and "in the case of jointly undertaken criminal activity . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity," *id.* § 1B1.3(a)(1)(B). Additionally, for certain offenses – including appellant's – relevant conduct includes "all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* § 1B1.3(a)(2).

Eleven instances of fraud or attempted fraud against six financial institutions were included in the PIR's determination of McCants' relevant conduct. According to the allegations in the PIR, unnamed co-conspirators used documents provided by McCants to obtain fraudulent loans or lines of credit. PIR ¶¶ 16-26. No allegation of bank fraud listed in the PIR accuses McCants of any involvement beyond providing the necessary credit histories and documents. These 11 offenses allegedly

resulted in a loss of $110,252.15, and they form a substantial portion of the losses attributed to McCants by the PIR.

Conduct related to the bank fraud scheme was undeniably "pivotal" in arriving at McCants' sentence, but the record is not clear enough to automatically assign culpability from that scheme to McCants. This is not to say the record clearly contravenes the sentence he received, only that crucial facts remain unsettled. Without the benefit of Rule 32 findings, we cannot properly assess the sentence McCants received.

The PIR does not specify what provision of the relevant conduct guideline justifies inclusion of the bank fraud losses. As noted above, there are three distinct criteria for including relevant conduct beyond the crime of conviction. The PIR invokes all three – that is, U.S.S.G. §§ 1B1.3(a)(1)(A), (a)(1)(B), and (a)(2) – but provides no analysis specific to each subsection. *See* PIR at 30-31. The Government has argued that, in conjunction with the other evidence adduced against McCants, we can infer that the District Court's factual findings warranted inclusion of the bank fraud operation under § 1B1.3(a)(1)(A). With respect to the other relevant conduct provisions in the Guidelines, the Government maintains that assignment of responsibility for the bank fraud is clear enough under § 1B1.3(a)(1)(A) that it is "unnecessary" to address subsections (a)(1)(B) or (a)(2). Gov't Br. at 46-47. We address only the inference that the Government draws from the record – that the District Court concluded that McCants aided, abetted, or counseled Buchanan.

To link McCants to the bank fraud under § 1B1.3(a)(1)(A), the Government leans heavily on the assertion that McCants "counseled" Buchanan on how to use his illicit materials to execute bank fraud. As recounted in Buchanan's testimony, the counseling he received from McCants consisted of two admonitions: (1) that "[w]hen you get too many loans at one place, they start noticing and . . . you'll either get caught or the

loan won't go through," and (2) that with respect to the appropriate appearance when attempting to obtain a fraudulent loan, one "can't look like someone on drugs going to pick up a loan." Tr. 3/3/04 at 83. In addition to this exchange, the Government points to evidence that McCants provided the documents used in the fraud. We note also that the record contradicts the PIR on a critical matter relating to the extent of McCants' involvement with the Buchanan conspiracy. The PIR asserted that McCants "would typically receive a 'one-third payment' for his activities, either at the time he produced a loan package . . . or after a fraudulent loan was obtained." PIR ¶ 13. But Buchanan testified that McCants' products had bounded prices ranges, *see* Tr. 3/03/04 at 96-97, 99, and that the variation in price "all depends on the workload during that day, workload meaning that if he's in a good mood he'll give it to you for whatever price," but on occasions where "he needs some money . . . then it would be a different price," Tr. 3/5/04 at 10. There is *nothing* to support a finding that McCants received a "one-third payment for his activities."

This record simply does not provide any obvious insight into what facts propelled the District Court's decision to attach the losses from the bank fraud conspiracy to McCants. This is especially troubling because the testimonial evidence seems to contradict the PIR's allegation that McCants profited in direct proportion to the Buchanan conspiracy's successes. We have no way to tell how the District Court resolved that inconsistency. That aside, it is not apparent whether the District Court defined McCants' relevant conduct purely on the basis of his transactions with Buchanan, or if the added involvement of "counseling" Buchanan tipped the scale.

It is also unclear what findings the District Court relied on to assign McCants responsibility for the "Celvin McCants" loans. The PIR's only discussion of those loans was the following: "Furthermore, the government indicated that the

defendant is responsible for two defaulted loans [using the name Celvin McCants] in the amount of $32,949 . . . ." PIR ¶ 33 (brackets in original). There is no evidence in the record indicating the basis for attributing these loans to McCants. The Government argues that McCants conceded the issue below, because he did not specifically contest the veracity of this allegation. But this claim is unpersuasive. McCants offered a counter-calculation of the amount of loss that should be attributed to him and it did not include the losses associated with the "Celvin McCants" loans. This was enough to put the Government – and the District Court – on notice that the issue was in dispute. Yet the District Court never made findings to resolve the dispute.

Similarly, the District Court's failure to heed Rule 32 deprives us of the ability to review the number of "access devices" – *i.e.*, misappropriated credit cards – it attributed to McCants. Appellant denies the Government's allegation that he sold them to Buchanan in a controlled buy. The District Court gave no indication as to whether or why it credited the Government's account. McCants also argues that the "obliterated" credit cards found in his possession, accounting for more than a dozen of the nearly three hundred attributed to him, cannot count as "access devices" under U.S.S.G. § 2B1.1, because the absence of an account number renders those cards incapable of penetrating any credit account. The Government counters that anything that can be used "in conjunction with" an account number falls within the statutory definition of "access device." *See* 18 U.S.C. § 1029(e)(1). We have not previously addressed this question, though two of our sister circuits have issued potentially divergent opinions. *Compare United States v. Nguyen*, 81 F.3d 912 (9th Cir. 1996) (holding that blank credit cards are access devices), *with United States v. Abozid*, 257 F.3d 191 (2d Cir. 2001) (holding that blank airline ticket stock is not an access device as long as it lacks an account number). We will not engage this issue now. Again, we flag it only to

underscore the need for written sentencing findings in accord with Rule 32.

Although the parties urge us to rule on the proper interpretation of the "sophisticated means" enhancement in § 2B1.1(b)(8) of the Guidelines, it would be inappropriate for us to do so in the absence of more specific factual findings by the District Court. Appellant asserts that the District Court inappropriately enhanced his sentence because he utilized sophisticated technology, whereas the enhancement is meant to target schemes relying on sophisticated methods of concealment. The Government contends that, even under that interpretation, McCants' operation qualifies for the enhancement since he operated out of multiple locations and exhibited impressive skill. Unfortunately, we have no way to discern the District Court's view. Its only comments on the subjects, quoted *supra*, are cryptic and unspecific. They reveal nothing about the District Court's view of the enhancement's application or the facts that triggered it in this case.

### III. CONCLUSION

For the reasons indicated above, we remand the case for the District Court to resentence McCants in accord with Rule 32.