# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 21, 2008                Decided February 10, 2009

No. 06-3161

UNITED STATES OF AMERICA,
APPELLEE

v.

CALVIN MCCANTS,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00130-01)

*Carlos J. Vanegas*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A.J. Kramer*, Federal Public Defender.

*Steven E. Swaney*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III*, *Mary B. McCord*, and *Virginia Cheatham*, Assistant U.S. Attorneys.

Before: GRIFFITH, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Calvin McCants produced false identifications and counterfeit documents that were used by others to bilk several banks out of more than $110,000. McCants pleaded guilty to possession of false document-making implements in violation of 18 U.S.C. § 1028(a)(5) (2000). On appeal, he challenges his sentence on the ground that the district court improperly calculated his sentencing range under the Federal Sentencing Guidelines. McCants argues that the court erred by applying a two-level enhancement for the use of "sophisticated means," and that the court's calculation of the loss caused by his "relevant conduct," which affects his total offense level, was incorrect. Because the record supports the district court's conclusion that McCants used sophisticated means to conceal his offense, we find no error in that enhancement. We vacate and remand for resentencing, however, because the district court erred by including within McCants's relevant conduct a bank fraud the government failed to show had the requisite connection to McCants's offense.

I.

On March 15, 2002, the government filed a 15-count indictment against McCants, charging him with, inter alia, aiding and abetting a scheme to defraud several banks in violation of 18 U.S.C. § 1344, possession of false identification documents in violation of 18 U.S.C. § 1028(a)(7), and possession of false document-making implements in violation of 18 U.S.C. § 1028(a)(5). The alleged scheme involved the creation and use of false identification documents to obtain fraudulent loans from various banks. Appellant's App. at 24 (Indictment). McCants's role in the scheme was to acquire credit histories and other personal information for the innocent people under whose names the loans would appear. *Id.* at 25. McCants used

this information to produce false identification documents bearing the names of his creditworthy victims with the pictures of individuals his coconspirators recruited to seek fraudulent loans from the banks. *Id.*

On August 19, 2003, McCants pleaded guilty to knowing possession of false document-making implements.[1] The plea agreement stipulates that section 2B1.1 of the Sentencing Guidelines applies to McCants's offense, *see* U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 (2003) [hereinafter U.S.S.G.], and that his base offense level is 6. Appellant's App. at 38 (Plea Agreement). McCants also agreed to a two-level increase to his sentence because his offense involved more than ten but fewer than fifty victims, and another two-level increase because the offense involved the possession of device-making equipment. *Id.* For its part, the government agreed to dismiss the remaining counts of the indictment and to decrease McCants's sentence by two levels because he accepted responsibility for his crime. *Id.* at 39. For those keeping score, which we recommend when trying to follow the reasoning of courts making their way through the numbers-driven world of the Sentencing Guidelines, McCants's offense level at this point is 8.

---

[1] 18 U.S.C. § 1028(a)(5) criminalizes the knowing possession of "a document-making implement with the intent such document-making implement will be used in the production of a false identification document or another document-making implement which will be so used." A document-making implement is "any implement, impression, template, computer file, computer disc, electronic device, or computer hardware or software, that is specifically configured or primarily used for making an identification document, a false identification document, or another document-making implement." *Id.* § 1028(d)(1).

Disputes nonetheless remained over McCants's final offense level. Section 2B1.1 pegs an offense level to the amount of loss for which the defendant is responsible. This loss calculation depends on the scope of the defendant's "relevant conduct," *see* U.S.S.G. § 1B1.3(a), and the government and McCants disagreed on whether the bank fraud fell within his "relevant conduct," as that phrase is defined in the Sentencing Guidelines. If the bank fraud is conduct relevant for McCants's offense, the loss he caused would rise to between $200,000 and $400,000, and his offense level would increase by twelve levels. The government and McCants also disagreed on whether his offense involved "sophisticated means," which would support an added two-level enhancement. *See id.* § 2B1.1(b)(8)(C).

In a statement attached to his plea agreement, McCants admitted possessing an inventory of false document-making implements on three dates: December 12, 2000, December 21, 2000, and March 25, 2002. Appellee's R. Material at 1–5 (Factual Statement). The statement referred only to those discrete dates and said nothing about McCants possessing the inventory at any other time. It was on these dates that the government executed search warrants at McCants's home, the Washington, D.C., and Baltimore, Maryland, offices of his company, Custom Computers, and several storage units that had been rented under one of his aliases. *Id.* Among the equipment found and confiscated on these dates were electronic templates for driver's licenses, passports, and birth certificates; unfinished Social Security cards; a pamphlet titled "How to make driver's licenses and other ID's on your home computer"; and a paper file titled "Bank Fraud Issues." *Id.*

After McCants entered his plea, the United States Probation Office prepared and issued its final Presentencing

Investigation Report (PSR), which concluded that an enhancement for the use of sophisticated means was not appropriate. The Probation Office found, however, that McCants's offense resulted in more than $200,000 but less than $400,000 in loss from conduct relevant to his crime. The Probation Office's loss calculation was comprised of $145,500 in loss unrelated to the bank fraud, $110,252 in loss associated with the bank fraud, and $32,949 in loss stemming from two defaulted loans held under the name "Celvin McCants." PSR ¶¶ 32–33. Beginning at the agreed-upon offense level of 8, the Probation Office applied the twelve-level increase from the loss calculation and settled upon a recommended total offense level of 20. *Id.* ¶¶ 41–50. Combined with McCants's criminal history category of III, the Probation Office's determinations yielded a sentencing range of 41 to 51 months. *Id.* ¶¶ 54, 83.

The district court held a sentencing hearing to resolve McCants's objection to the Probation Office's conclusion regarding his relevant conduct. The government presented testimony by Rickey Buchanan, the confessed ringleader of the bank fraud who was now cooperating with the prosecution. Buchanan testified that McCants gave him the false driver's licenses and military identifications, credit reports, and other financial information needed to commit the bank fraud. Sentencing Hr'g Tr. 76–79 (Mar. 3, 2004). He also testified that McCants did much more. According to Buchanan, McCants not only knew of the bank fraud but advised him how to pull it off. For example, McCants told Buchanan the documents needed to obtain bank loans, how many times to use a particular identification, and how many loans he could obtain at a single bank without creating suspicion. *Id.* at 82–83. McCants also told Buchanan that his coconspirators should "dress the part" when impersonating loan-seekers. *See id.* at 83. The government introduced

physical evidence to corroborate Buchanan's testimony, including false identifications and documents used in the bank fraud that were obtained from McCants.

The district court announced McCants's sentence on May 11, 2004. Although it used the recommended PSR offense level of 20 as its "basic figure," Sentencing Hr'g Tr. 7 (May 11, 2004), the court departed from the PSR in two respects. It concluded that McCants employed sophisticated means worthy of an added two-level enhancement. *Id.* at 8–9. The court also imposed an additional two-level enhancement not applied in the PSR to account for McCants's falsification of Social Security numbers and military identifications. *Id.* at 9–10. These enhancements led to an offense level of 24 and a sentencing range of 63 to 78 months in prison. The district court sentenced McCants to 78 months and ordered him to pay restitution to the defrauded banks in the amount of $77,852.15. *Id.* at 36. The court did not issue a sentencing opinion.

On his first appeal, McCants argued that the district court failed to make findings on disputed material sentencing issues as required by Federal Rule of Criminal Procedure 32(i)(3)(B). *See United States v. McCants*, 434 F.3d 557, 561 (D.C. Cir. 2006). We agreed and remanded for resentencing, finding "[c]hief among the controversies left unaddressed by the District Court was the scope of McCants' 'relevant conduct,'" *id.* at 562, and the facts that triggered the sophisticated means enhancement, *id.* at 564–65.

On remand, the district court imposed an identical sentence. *United States v. McCants*, No. 02-0130, slip op. at 1 (D.D.C. Oct. 27, 2006). The court found that the bank fraud, which resulted in a loss of $110,252, was part of the relevant conduct for which McCants was responsible. Together with

the $32,949 loss associated with the Celvin McCants loans and $133,500 in loss associated with his possession and sale of counterfeit credit cards and other similar devices, the court concluded that McCants was responsible for more than $200,000 but less than $400,000 in loss. As a result, it increased his sentence by twelve levels. *Id.* at 22. Turning to the sophisticated means enhancement, the court "wholeheartedly" agreed that McCants used sophistication in the execution and concealment of his offense and applied a two-level enhancement. *Id.* at 23–25. The court also imposed another two-level enhancement because the sentence provided for by the Sentencing Guidelines failed to "reflect the seriousness of the offense." *Id.* at 25–29. The next step for the district court was totaling McCants's offense level based on the sum of the various calculations called for by the Sentencing Guidelines. McCants's base offense level for unlawful possession of the false document-making tools was 6. This level rose to 26 after upward adjustments of four levels as stipulated in the plea agreement, twelve levels for the amount of loss caused, two levels for the use of sophisticated means, and two levels for the seriousness of the offense. Subtracting two levels for acceptance of responsibility brought the total offense level to 24, which, given McCants's criminal history category of III, translated to a sentencing range of 63 to 78 months. The district court again selected the highest end of that range and sentenced McCants to 78 months in prison. *Id.* at 29.

McCants appealed his sentence again. We have jurisdiction under 18 U.S.C. § 3742. In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are advisory, not mandatory. *Id.* at 245. Accordingly, we review McCants's sentence under an abuse-of-discretion standard: We "first ensure that the district court committed no significant procedural error . . . ." *Gall v.*

*United States*, 128 S. Ct. 586, 597 (2007). If a sentence is procedurally unsound, discretion has been abused. *United States v. Tann*, 532 F.3d 868, 873 (D.C. Cir. 2008). If no procedural infirmity exists, we "consider the substantive reasonableness of the sentence . . . ." *Gall*, 128 S. Ct. at 597.

McCants argues that the district court incorrectly applied the Sentencing Guidelines to the facts. Specifically, he contends the district court erred by including the bank fraud within his relevant conduct and by concluding that his offense involved sophisticated means.[2] 18 U.S.C. § 3742(e) provides the standard under which we review these decisions.[3] Accordingly, we "shall accept the findings of fact of the district court unless they are clearly erroneous" and "shall give due deference to the district court's application of the guidelines to the facts." *Id.* We have explained before that due deference "presumably . . . fall[s] somewhere between *de*

---

[2] McCants does not contest the loss associated with his possession and sale of counterfeit credit cards or the seriousness of the offense enhancement. He does argue, however, that the district court erred by attributing to him the loss associated with the Celvin McCants loans. The government agrees. Appellee's Br. 35–36 ("Even though there was overwhelming evidence that [McCants] used 'Celvin McCants' as an alias, there was no evidence from the banks demonstrating that the loans were issued but never repaid."). Because we vacate McCants's sentence and remand for resentencing, we leave to the district court to determine the effect of this concession on the sentence.

[3] Though *Booker* held § 3742(e) unconstitutional insofar as it required courts to reverse sentences falling outside the applicable Sentencing Guidelines range, we have since held that this section continues to provide the standard by which we review a district court's application of the Sentencing Guidelines. *See Tann*, 532 F.3d at 873–74 ("We . . . see no reason to think *Booker* displaced the congressionally mandated standard of review . . . .").

*novo* and 'clearly erroneous.'" *United States v. Kim*, 23 F.3d 513, 517 (D.C. Cir. 1994).

## II.

Under section 2B1.1 of the Sentencing Guidelines, a defendant's offense level depends on the amount of loss caused not only by the conduct for which he was convicted, but also for the "relevant conduct" for which he is found responsible. U.S.S.G. § 2B1.1; *see also United States v. Mellen*, 393 F.3d 175, 182 (D.C. Cir. 2004). The Sentencing Guidelines define relevant conduct as:

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant[] . . .
>
> . . .
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1).

The district court found that, "[u]pon review of the evidence, . . . [McCants] aided and abetted the bank fraud scheme perpetrated by Buchanan" by supplying Buchanan with false identifications, credit reports, and other financial documents. *McCants*, No. 02-0130, slip op. at 11–16. McCants does not dispute that he supplied such material to Buchanan. Instead, he contends it was not his intention that the bank fraud be carried out successfully, and that his aid to Buchanan did not occur during, in preparation for, or in the

course of concealing his offense as required by section 1B1.3(a)(1). Appellant's Br. 11–12, 15.

We first address the standard we apply when reviewing a district court's determination concerning relevant conduct. McCants simply refers to the general rule that we review questions of law de novo, factual determinations for clear error, and give due deference to the district court's applications of the Sentencing Guidelines to the facts. Appellant's Br. 9. The government cites *United States v. Seiler*, 348 F.3d 265, 268 (D.C. Cir. 2003), to argue that we ordinarily review relevant conduct determinations for clear error. Appellee's Br. 25. But in *Seiler* the relevant conduct matter on review was the district court's factual finding that the defendant participated in a criminal conspiracy. Here we are faced with both a factual question—whether McCants aided the bank fraud—and an application of the Sentencing Guidelines to the facts presented—whether McCants's acts fall within the Sentencing Guidelines' definition of relevant conduct. On the first issue, we use the clear error standard; on the second, we grant the district court due deference.

The district court did not clearly err in finding that McCants aided and abetted the bank fraud. The commentary to section 1B1.3(a)(1) directs us to McCants's "specific acts and omissions . . . rather than [to] whether [he] is criminally liable for an offense as a principal, accomplice, or conspirator." U.S.S.G. § 1B1.3 cmt. n.1; *cf. Stinson v. United States*, 508 U.S. 36, 37 (1993) ("[C]ommentary to the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). There can be no serious dispute that McCants's acts and omissions aided and abetted the bank fraud. Not only did he advise Buchanan on the types of

documents needed to obtain a loan from a bank, but he furnished Buchanan with false identifications, credit reports, and other background financial information. He instructed Buchanan on how best to accomplish the fraud, and he told Buchanan how to ensure the scheme's repeated success. McCants argues in response that he lacked the "fraudulent intent . . . to deprive the banks of their money . . . ." Appellant's Br. 15. Although intent is an indispensible element in establishing criminal liability for the offense of aiding and abetting, *see United States v. Washington*, 106 F.3d 983, 1004 (D.C. Cir. 1997) (quoting *United States v. Raper*, 676 F.2d 841, 849 (D.C. Cir. 1982)), it is irrelevant to our inquiry here. The commentary emphasizes actions over intentions and expressly states that we are not to use the criminal standard for aiding and abetting liability to determine whether McCants aided the bank fraud.

The more difficult question is whether McCants's aid to the bank fraud occurred "during the commission of [his] offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1).[4] The district court

---

[4] This temporal component of the relevant conduct guideline may suffer from a serious flaw. A literal reading could permit the government to punish a defendant for unrelated conduct, without proving guilt beyond a reasonable doubt, simply by virtue of the fact that the conduct occurred contemporaneously with his offense of conviction. We doubt this reading is correct. That the provision is labeled "relevant conduct" suggests that merely contemporaneous conduct is insufficient, and the second and third clauses of that provision seem to require a substantive link between the relevant conduct and the offense of conviction. In any event, McCants's case does not pose such a problem. His offense of conviction—possession of false document-making implements—is related to the conduct for which the government seeks to hold him

simply did not address this temporal component of section 1B1.3(a). Likewise, the government devotes little attention to the issue. Without citing to record evidence, the government's brief claims in conclusory fashion that McCants "supplied the counterfeit documents to Buchanan at the same time that [he] possessed the false document-making equipment." Appellee's Br. 34. At oral argument, the government referred in passing to McCants's offense of conviction as a "continuum," beginning with its preparation and extending beyond its actual commission, *see* Oral Arg. Recording at 17:06–25, but failed to show how McCants aided the bank fraud during this time.

We recognize that at some point McCants must have possessed the tools needed to make the false identifications he gave Buchanan. But McCants's factual statement admits he possessed false document-making implements on three specific dates and otherwise makes no concessions regarding when else he unlawfully possessed those tools or similar equipment. The bank fraud occurred between August 2000 and July 2001. It is possible McCants assembled, possessed, and disposed of the equipment used to aid the bank fraud either before or after the days in December 2000 on which he committed his offense of possession. If the government seeks to include the bank fraud within the temporal component of the relevant conduct provision, it must make some showing that the tools McCants used to aid the bank fraud were those he was caught with. *United States v. Salmon*, 948 F.2d 776, 778–79 (D.C. Cir. 1991) ("[T]he government bears the burden of proving by a preponderance of the evidence any facts that would enhance a defendant's sentence.").

---

responsible for at sentencing—use of those implements to make false documents for a bank fraud.

13

To determine if the government has met this burden, we first ask whether it has shown that McCants aided the bank fraud "during" his offense of conviction. U.S.S.G. § 1B1.3(a)(1). Because the factual basis for McCants's conviction was possession of false document-making tools on December 12, 2000, December 21, 2000, and March 25, 2002, the government must show that McCants aided and abetted the bank fraud on at least one of these three days. But we find no evidence—and the government has pointed us to none in its brief or at oral argument—that McCants assisted Buchanan on any of these days. Although we know from Buchanan's testimony that McCants did help him at some point, we are left to guess when this help occurred.

The government also has failed to satisfy either the second or third clause of section 1B1.3(a)(1), which require the government to show that McCants aided and abetted the bank fraud "in preparation for [his] offense" or "in the course of attempting to avoid detection or responsibility for [his] offense." *Id.* The government fails to make clear how McCants's assisting others to defraud the banks was done in preparation for or in concealment of his crime of possession of false document-making implements on three specific days. The closest the government comes to carrying its burden on this point is its self-evident claim made only at oral argument that McCants must have gathered false document-making equipment in preparation for his offense of possession of that equipment. *See* Oral Arg. Recording at 24:29–35. The government fails to take the necessary additional step required by the temporal component of the guideline, however, and demonstrate that the equipment McCants assembled in preparation for his offense was the same equipment he used to aid the bank fraud.

McCants prevails because he pleaded guilty to unlawful possession on only three discrete days, and the government made no attempt to show he aided the bank fraud on those days, in the course of preparing for his unlawful possession, or in an attempt to conceal his crime. We therefore conclude that, under the language of the Sentencing Guidelines, the district court erred by including the bank fraud within McCants's relevant conduct. We vacate McCants's sentence and remand to the district court for resentencing. But we also note that in the wake of *Booker*, district courts have room to depart from the Sentencing Guidelines so long as they explain their departures and the resulting sentence is "reasonable." *Gall*, 128 S. Ct. at 597.

### III.

McCants also argues that the district court erred in finding that his offense "involved sophisticated means." U.S.S.G. § 2B1.1(b)(8)(C). The Sentencing Guidelines leave "sophisticated means" undefined, and this court has not had occasion to provide guidance. The commentary to the Sentencing Guidelines is again instructive: "'[S]ophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* § 2B1.1 cmt. n.7. Conducting an offense in multiple jurisdictions "ordinarily indicates sophisticated means." *Id.* So too does the use of "fictitious entities, corporate shells, or offshore financial accounts" to conceal the fruits of an unlawful scheme. *Id.*

McCants insists his means were not sophisticated. He contends the efforts he employed to escape detection lack sophistication because they are "not comparable to, for example, the use of offshore enterprises, foreign corporations or lengthy schemes designed solely to conceal and evade

detection." Appellant's Br. 24. He also argues that the government's focus on his sophisticated production methods and identification products is inappropriate given that his offense of conviction is *possession* of false document-making implements—not *production* of false identification documents. According to McCants, his actual possession of the illicit materials was not at all sophisticated. Appellant's Reply Br. 10, 13.

We disagree. The district court's conclusion that McCants's offense warrants a sophisticated means enhancement is an application of the Sentencing Guidelines to the facts. We thus accord due deference to the court's conclusion that McCants's "operations, used to conceal his possession of his tools and of his activities, were especially complex." *McCants*, No. 02-0130, slip op. at 24. McCants committed his offense in multiple states and kept some of his false documents and device-making implements hidden in storage units rented under an alias. He also admits to using an allegedly legitimate business to conceal his offense from law enforcement. *See* Oral Arg. Recording at 5:40–6:30. That we can imagine scenarios involving more elaborate means to avoid detection or conviction does not render the district court's resolution of the question invalid. We therefore affirm the two-level enhancement for sophisticated means.

## IV.

We vacate McCants's sentence and remand this matter to the district court for resentencing.

*So ordered.*