# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 26, 2009        Decided July 10, 2009

No. 08-3020

UNITED STATES OF AMERICA,
APPELLEE

v.

ANTOINE H. BLALOCK,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cr-00157-HHK-1)

*Edward C. Sussman*, appointed by the court, argued the cause and filed the brief for appellant.

*Michael T. Ambrosino*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III*, Assistant U.S. Attorney.

Before: GINSBURG, GARLAND, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*:  Appellant Antoine Blalock pled guilty to unlawful possession of a firearm by a convicted felon, in exchange for the government's agreement to drop other gun and drug charges.  At sentencing, the parties disagreed over whether Blalock was subject to an upward adjustment under the United States Sentencing Guidelines for possessing the firearm in connection with another felony offense.  The district court concluded that Blalock possessed the gun in connection with his possession with intent to distribute marijuana, and it therefore applied the enhancement.  Blalock now appeals, contending that the district court erred in enhancing his sentence.  Finding no error, we affirm the judgment of the district court.

I

On the morning of May 21, 2007, Blalock drove up to the Metropolitan Police Department's (MPD) Seventh District station in southeast Washington, D.C.[1]  He stopped his car in the middle of the street, got out, walked around to the back, and pulled a black bag from the trunk.  Moments later, he began shooting a gun into the air.  As he fired, a witness heard him yell:  "[T]he police should leave us alone and let us sell our weed."  Proffer of Evidence 1 (Nov. 9, 2007).  MPD officers heard the shots and ran outside.  An officer drew his weapon and approached Blalock, ordering him to put the gun down.  Blalock removed the magazine from the gun and threw both magazine and gun to the ground.  He then took off all his clothes and stood naked in the street.

---

[1]Our recitation of the facts draws on information from a "Proffer of Evidence" that Blalock signed as part of his plea agreement, and from a factual statement in his Presentence Investigation Report that he did not contest.

The police arrested Blalock without further incident. From the area at his feet, they recovered a semi-automatic handgun and five shell casings. Amidst Blalock's belongings scattered near his car's trunk, officers found twenty-four individually packaged bags of marijuana. According to the "Proffer of Evidence" that Blalock signed as part of his plea agreement, the bags contained an aggregate of 44.1 grams of marijuana, which was "packaged in a manner and found in an amount that was consistent with the way marijuana is distributed in the District of Columbia." *Id.* at 2.

Upon his arrest, Blalock told the officers that he had driven to the police station to win recognition for his record label. The officers then drove Blalock to a hospital, where he was found to have phencylidine (PCP) in his bloodstream. He was released to police custody later that day.

On June 9, 2007, a grand jury indicted Blalock on one count of possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(D); and one count of using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). On November 9, 2007, Blalock entered into a plea agreement with the government. He agreed to plead guilty to unlawful possession of a firearm by a convicted felon; in return, the government agreed to dismiss the remaining charges. The agreement specifically stated that neither party was "precluded from arguing for or against the applicability of . . . §2K2.1(b)(6) of the Sentencing Guidelines," Plea Agreement 3 (Nov. 9, 2007), which provides for a four-level increase in a defendant's base offense level "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense," U.S. SENTENCING

GUIDELINES MANUAL § 2K2.1(b)(6) (2007) [hereinafter U.S.S.G.].

Prior to sentencing, the U.S. Probation Office prepared a Presentence Investigation Report (PSR) that calculated Blalock's criminal history and offense level under the Guidelines.  It noted that Blalock's multiple previous convictions generated a criminal history category of IV, and that his base offense level started at 20 because he committed the weapons offense after sustaining at least one felony conviction for a crime of violence.  *See* U.S.S.G. § 2K2.1(a)(4)(A). Because Blalock accepted responsibility for the gun crime, the PSR reduced his offense level to 17, *see id.* § 3E1.1, which, coupled with his criminal history category, would have yielded a sentencing range of 37 to 46 months' imprisonment.  *See id.* ch. 5, pt. A (sentencing table).  But the PSR then added a four-offense-level enhancement under Guideline § 2K2.1(b)(6) based on the conclusion that Blalock had used or possessed the firearm in connection with another felony offense, namely, possession with intent to distribute marijuana.  The resulting offense level of 21 generated a sentencing range of 57 to 71 months.  *See id.* ch. 5, pt. A.

At the sentencing hearing that followed, Blalock's counsel objected to the four-level enhancement under § 2K2.1(b)(6). Counsel argued that, because Blalock was suffering from PCP intoxication at the time of his arrest, he did not possess the marijuana with the specific intent to distribute it.  The government responded that Blalock's PCP intoxication did not prevent him from forming the intent necessary to commit the drug offense.  Although the court told Blalock that his counsel "ma[d]e a very good argument on [his] behalf," Sentencing Hr'g Tr. 31-32 (March 7, 2008), it nonetheless found by a preponderance of the evidence that Blalock possessed the marijuana with the intent to distribute it.  The court imposed a

sentence of 57 months' incarceration, which is the subject of this appeal.

## II

In the wake of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines "are now advisory, and appellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" *Gall v. United States*, 128 S. Ct. 586, 594 (2007). We review the reasonableness of a sentence in two steps. First, we must "ensure that the district court committed no significant procedural error, such as . . . improperly calculating . . . the Guidelines range." *Id.* at 597. Second, we "consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* This appeal involves only the accuracy of the district court's Guidelines calculation.

Blalock's sole contention is that the court erred by increasing his offense level under Guideline § 2K2.1(b)(6). To determine whether the increase was warranted, the district court properly applied a preponderance of the evidence standard. *See United States v. Watts*, 519 U.S. 148, 156-57 (1997) (citing U.S.S.G. § 6A1.3 cmt.); *In re Sealed Case*, 246 F.3d 696, 698 (D.C. Cir. 2001). In reviewing a sentencing determination, we "'shall accept the findings of fact of the district court unless they are clearly erroneous' and 'shall give due deference to the district court's application of the guidelines to the facts.'" *United States v. McCants*, 554 F.3d 155, 160 (D.C. Cir. 2009) (quoting 18 U.S.C. § 3742(e)).[2] "[D]ue deference presumably

---

[2]Although *Booker* "held § 3742(e) unconstitutional insofar as it required courts to reverse sentences falling outside the applicable Sentencing Guidelines range, we have since held that this section continues to provide the standard by which we review a district court's

. . . fall[s] somewhere between *de novo* and clearly erroneous." *Id.* (internal quotation marks omitted).

Section 2K2.1(b)(6) provides for a four-level increase in a defendant's offense level if he "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). The "[]other felony offense" the court found here was possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(D), as charged in Blalock's indictment. Blalock objects to two determinations the district court made in applying § 2K2.1: (1) that he possessed marijuana with the intent to distribute it; and (2) that he possessed his weapon "in connection with" that drug crime.

We review the first of these determinations for clear error, as it is plainly a finding of fact. *McCants*, 554 F.3d at 160. What standard applies to the district court's "in connection with" determination is a closer question. On the one hand, the Eighth Circuit has treated the issue as a factual finding subject to clear error review. *See United States v. Regans*, 125 F.3d 685, 686 (8th Cir. 1997). On the other hand, when this circuit "has focused on whether particular conduct was sufficient to warrant [an] enhancement, it has largely accorded due deference." *United States v. Henry*, 557 F.3d 642, 645 (D.C. Cir. 2009); *cf. McCants*, 554 F.3d at 161 (noting that the due deference standard applies to a district court's determination that a defendant's acts "fall within the Sentencing Guidelines' definition of relevant conduct"). Because whether a defendant's conduct meets the "in connection with" requirement seems best described as an application of the Guidelines to the facts, we review that determination under the due deference standard.

application of the Sentencing Guidelines." *McCants*, 554 F.3d at 160 n.3; *see United States v. Tann*, 532 F.3d 868, 874 (D.C. Cir. 2008).

7

A

Blalock's first contention is that he did not possess his firearm in connection with "another felony offense," U.S.S.G. § 2K2.1(b)(6), because he did not commit another felony offense. He notes that the only such offense alleged -- possession with intent to distribute marijuana -- requires the specific intent to distribute a controlled substance. And he maintains that, as a result of PCP intoxication, he lacked the capacity to form the necessary *mens rea*. We find no clear error in the district court's determination that Blalock had the requisite intent. *See* Sentencing Hr'g Tr. 25-26.

It is true both that voluntary intoxication can prevent a defendant from being able to form the requisite state of mind for a specific intent crime, *see Parker v. United States*, 359 F.2d 1009, 1012 n.5 (D.C. Cir. 1996); *Heideman v. United States*, 259 F.2d 943, 946 (D.C. Cir. 1958), and that possession with intent to distribute a controlled substance is such a crime, *see United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007). But intoxication does not always have that effect, and whether it does in any given case depends upon the evidence. *See Heideman*, 259 F.2d at 946. The leading precedent is *Heideman v. United States*, in which the defendant -- a sailor attached to a navy ship docked in Washington, D.C. -- was charged with assaulting a taxi driver with the intent to rob him. The defendant did not dispute that he had "sandbagged" the driver, hitting him from behind with a sock filled with gravel. But he did dispute that he had the requisite intent, employing -- literally -- a "drunken sailor" defense: the defendant maintained that he was too intoxicated to have had the required intent to rob. The court disagreed, observing that the defendant had not been too drunk to fill the sock with gravel before entering the taxi or to rifle the driver's pockets after hitting him. *Id.* at 947. Holding that "[d]runkenness, while efficient to reduce or remove

inhibitions, does not readily negate intent," the court concluded that "the evidence in this case could not create a reasonable doubt in the mind of any reasonable man as to whether appellant possessed the requisite intent" for the crime of robbery. *Id.* at 946-47 (footnote omitted).

We need not go that far to resolve this appeal. There is no dispute that Blalock was high on PCP when he arrived at the police station. Nor is there any doubt that Blalock's intoxication reduced his inhibitions, as evidenced by his decision to strip naked on the street. At the same time, however, he was sufficiently in control of his faculties to operate a motor vehicle, deliberately drive to the police station, retrieve his gun from the trunk, fire the weapon into the air several times, and then remove the magazine and throw down both the gun and magazine when ordered to do so. This evidence is adequate to support the court's conclusion, by a preponderance of the evidence, that the PCP had not "negate[d]" Blalock's ability to form the necessary intent. *Id.* at 946.[3]

---

[3]*See United States v. Trabue*, No. 99-6406, 2000 WL 1828671, at \*2 (6th Cir. Dec. 5, 2000) (holding that the district court reasonably found the defendant's alcohol consumption did not negate his intent to commit aggravated assault because, "even though [the defendant] had been drinking, [he] had the presence of mind to take hostages, refuse to speak with a . . . negotiator, exit the back door in an attempt to evade the SWAT team, and then circle around the house when he was confronted by officers"); *United States v. Briseno-Mendez*, 1998 WL 440279, at \*12 (10th Cir. July 17, 1998) (holding that, even if the defendant "was drunk at the time he was arrested," there was "no evidence his intoxication created a mental impairment sufficient to negate the existence of specific intent" to commit conspiracy).

9

Moreover, as the district court also concluded, what Blalock's intent was is indicated by the words he uttered while firing his gun: "[T]he police should leave us alone and let us sell our weed." Proffer of Evidence 1. Indeed, those words confirm the reasonable inference that can be drawn from the fact that the twenty-four bags of marijuana scattered on the ground around his trunk were "packaged in a manner and found in an amount that was consistent with the way marijuana is distributed in the District of Columbia." *Id.* at 2; *see, e.g.*, *United States v. Williams*, 233 F.3d 592, 595 (D.C. Cir. 2000) (noting that intent to distribute narcotics may readily be inferred when drugs are packaged in a large number of individual bags).[4] In combination with the evidence that Blalock retained significant control of his faculties, these facts require us to conclude that the district court did not clearly err in finding that Blalock was capable of forming -- and did form -- the specific intent to distribute marijuana. *See, e.g.*, *United States v. Richardson*, 459 F.2d 1133, 1134 (D.C. Cir. 1972) (holding that, despite some evidence that the defendant might have been under the influence of narcotics, "there [wa]s clear evidence supporting an inference that appellant had the requisite specific intent [to commit robbery], *e.g.*, appellant's statement to the teller, 'Now you can help me, you can give me those fives, tens, and twenties, and put them neatly in a bag'").

Blalock contends that "it would be ludicrous to conclude that [he] . . . arrived [at the police station] with the distribution

---

[4]*See also United States v. Glenn*, 64 F.3d 706, 711 (D.C. Cir. 1995) ("[T]he segregation of the cocaine found on [the defendant] into nine individual ziplock bags could reasonably have supported the jury's inference that [the defendant] intended to distribute it."); *United States v. Herron*, 567 F.2d 510, 513 (D.C. Cir. 1977) (noting that intent to distribute narcotics could be inferred from the fact that "the heroin . . . was packaged in a convenient manner as if for sale").

or sale of marijuana in mind."  Appellant's Br. 7.  But an intent to distribute at any particular place or time is not an element of 21 U.S.C. § 841(a)(1).  As the Seventh Circuit held in *United States v. Hairston*, "[t]he question is not whether [the defendant] intended to distribute the drugs at the moment of his arrest[,] . . . but whether [he] intended to distribute them at *any* time (within the period of limitations)."  23 Fed. Appx. 555, 556 (7th Cir. 2001).  *See generally United States v. Mancillas*, 172 F.3d 341, 343 (5th Cir. 1999); *United States v. Bruce*, 939 F.2d 1053, 1056 (D.C. Cir. 1991).  It was not clearly erroneous for the district court to conclude that a man who said he wanted the police to "let us sell our weed" intended to do just that.

B

Blalock's second contention is that he did not use or possess his weapon "in connection with" the marijuana offense. Application Note 14 to § 2K2.1 provides that, in general, the "in connection with" requirement is satisfied if "the firearm . . . facilitated, or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1 cmt. n.14(A).  When the other felony offense is a drug trafficking crime, the Application Note states that the enhancement applies if the "firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia."  *Id.* § 2K2.1 cmt. n.14(B).  In such a case, "application of [the enhancement] is warranted because the presence of the firearm has the potential of facilitating another felony offense."  *Id.*; *see also United States v. Hardin*, 248 F.3d 489, 498-99 (6th Cir. 2001) ("The fact that the firearm was found in the same room where the cocaine was stored can lead to the justifiable conclusion that the gun was used in connection with the felony."); *Regans*, 125 F.3d at 686 (explaining that, because "a firearm is a 'tool of the trade' for drug dealers[,] . . . a factfinder may infer a connection when defendant carried a firearm and a distribution quantity of illegal drugs").

In this case, there is no dispute that Blalock's handgun was found "in close proximity to drugs"; when the police confronted him, the gun was in his hand and the marijuana was scattered nearby. Accordingly, his counsel had to concede that the only way to reverse the district court's "in connection with" finding would be to disregard Application Note 14. Oral Arg. Recording at 6:53-58. But "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline," *Stinson v. United States*, 508 U.S. 36, 38 (1993), and there is no such violation or inconsistency here. Indeed, even without the Application Note, we would have to agree with this observation of the district court: "[I]t's hard to get around the proposition that the firing [of] the gun in the air is . . . connected with letting us sell our weed when, in fact, weed was in the car from which Mr. Blalock emerged and was scattered around on the ground[]." Sentencing Hr'g Tr. 25; *see id.* at 32.

### III

For the foregoing reasons, the judgment of the district court is

*Affirmed*.