# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 10, 2020            Decided April 23, 2021

No. 19-3100

UNITED STATES OF AMERICA,
APPELLEE

v.

FRANCISCO CARBAJAL FLORES, ALSO KNOWN AS DALMATA,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cr-00143-1)

———

*Richard K. Gilbert*, appointed by the court, argued the cause for appellant. With him on the briefs was *Kristen Grim Hughes,* appointed by the court.

*Suzanne G. Curt*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Elizabeth Trosman*, *Michael DiLorenzo*, and *Karen P. Seifert*, Assistant U.S. Attorneys.

Before: ROGERS and RAO, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion of the Court filed by *Circuit Judge* RAO.

Opinion dissenting in part filed by *Senior Circuit Judge* RANDOLPH.

RAO, *Circuit Judge*: Mexican cartel member Francisco Carbajal Flores pled guilty to three counts. The first involved a racketeer influenced and corrupt organization ("RICO") conspiracy to import controlled substances into the United States, and the second and third counts related to being an accessory after the fact to the murder and attempted murder in Mexico of two U.S. Special Agents. On appeal, Flores argues that the district court erred in sentencing him for the RICO conspiracy because it miscalculated his offense level under the U.S. Sentencing Guidelines. In addition, Flores argues that his other two convictions should be vacated because 18 U.S.C. § 1114, which criminalizes the killing or attempted killing of a U.S. officer, does not apply extraterritorially, as recognized by this court's recent decision in *United States v. Garcia Sota*, 948 F.3d 356 (D.C. Cir. 2020). We affirm the district court's sentence for the RICO conspiracy and vacate Flores' two convictions under Section 1114.

I.

The government charged Flores with various crimes related to his role with Los Zetas, a violent, transnational criminal organization that controls hundreds of miles of territory along the United States-Mexico border, as well as various drug trafficking routes. Los Zetas transports multi-ton quantities of cocaine and marijuana from Mexico to the United States each month.

Los Zetas operates with a militaristic structure and protects its territory with force. A plaza boss controls a town with the cartel's hit squads ("estacas"). Each hit squad is led by a commander ("comandante") who manages the squad's armed

hitmen ("sicarios"). Frequently patrolling by vehicle, the hit squads "provid[e] protection for the cartel's illegal activity, including protection of its lucrative drug trafficking routes from Mexico to the United States, identification and elimination of rival cartel members, kidnap[p]ings, carjackings, human smuggling and assassinations." App. 38. Los Zetas also employs lookouts ("halcones") to monitor activity in the cartel's territory.

Flores joined Los Zetas in November 2009 as a lookout, became a hitman in May 2010, and was later promoted to a hit squad commander. Flores admitted that during his time with Los Zetas he "carried out various acts of violence and intimidation on behalf of the organization against Mexican law enforcement officers and rival drug cartel members for the purpose of maintaining control over the organization's territory, to include its drug smuggling routes to the United States." App. 38–39.

As part of a plea agreement, Flores also provided information about an attack on two U.S. Immigration and Customs Enforcement Special Agents. On February 15, 2011, Special Agents Jaime Zapata and Victor Avila were returning to Mexico City in an armored SUV when two vehicles—each occupied by a Los Zetas hit squad—forced the SUV off the road near San Luis Potosi. Special Agent Avila stated they were diplomats from the U.S. Embassy, but the hit squad nonetheless fired at least eighty-eight rounds of ammunition at the agents, with several rounds entering the SUV through an open window. Special Agent Zapata was killed, and Special Agent Avila was seriously wounded. Both hit squads fled.

Flores belonged to one of these hit squads, but he was not present at the attack because he was visiting his family that day. When Flores rejoined the squad, they told him what transpired

during the attack and made multiple inculpatory statements. Flores was tasked with protecting his fellow hit squad members from arrest. But about a week after the attack, Mexican authorities arrested Flores and his hit squad. Authorities also recovered various weapons, which ballistics testing linked to cartridge casings recovered from the scene of the attack.

Following his arrest, Flores was charged in a four-count indictment. The government entered into a plea agreement with Flores that allowed him to plead to more limited charges and that included a detailed statement of facts. Pursuant to that agreement, he pled guilty to three counts:[1] (1) a RICO conspiracy, in violation of 18 U.S.C. § 1962(d); (2) accessory after the fact to the murder of an officer or employee of the United States, in violation of 18 U.S.C. §§ 3, 1111, 1114; and (3) accessory after the fact to the attempted murder of an officer or employee of the United States, in violation of 18 U.S.C. §§ 3, 1113, 1114.[2]

Consistent with his plea agreement, Flores testified as a government witness in the trial of two individuals who

---

[1] The three-count information included two of the four counts for which he was indicted and a RICO conspiracy charge that was not included in the indictment.

[2] Section 1114 makes it illegal to "kill[] or attempt[] to kill any officer or employee of the United States … while such officer or employee is engaged in or on account of the performance of official duties." 18 U.S.C. § 1114. Section 1114 incorporates Sections 1111 and 1113 by reference: a person who violates 1114 "shall be punished … in the case of murder, as provided under section 1111" or "in the case of attempted murder or manslaughter, as provided in section 1113." *Id.* § 1114(1), (3). Section 3 provides the standard for being an "accessory after the fact" to these crimes. *Id.* § 3. For brevity, we refer to Counts 2 and 3 as convictions under Section 1114.

participated in the attack on the Special Agents. The district court subsequently sentenced Flores to twelve years of incarceration, followed by three years of supervised release, a $300 special assessment, and restitution. Flores appealed, challenging the district court's consideration of his murder of a Mexican national when it calculated his Sentencing Guidelines ("Guidelines") range. We agreed with Flores that the district court erred and remanded for resentencing because Flores' murder of a Mexican national did not qualify as "underlying racketeering activity" and thus could not be used when calculating his base offense level for the RICO conspiracy. *See United States v. Flores*, 912 F.3d 613, 622–23 (D.C. Cir. 2019) ("*Flores I*") (cleaned up).

The Probation Office prepared a revised presentence report, calculating Flores' total offense level under the Guidelines at 43. After a hearing, the district court again sentenced Flores to twelve years' imprisonment with credit for time served, followed by three years of supervised release, a $300 special assessment, and restitution.

In this second appeal, Flores challenges the district court's calculation of his sentence for the RICO conspiracy under the Guidelines. In addition, Flores argues his convictions for being an accessory after the fact to the murder and attempted murder of two Special Agents should be vacated because the statute under which he was convicted, 18 U.S.C. § 1114, does not apply extraterritorially, as we recently recognized in *Garcia Sota*, 948 F.3d at 357. We consider each claim in turn.

II.

Flores argues that the district court erred in sentencing him for the RICO conspiracy by miscalculating his offense level under the Guidelines. This court reviews a sentence imposed under the Guidelines to determine whether it is "reasonable."

*United States v. Blalock*, 571 F.3d 1282, 1285 (D.C. Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 46 (2007)). Reasonableness review is a two-step process: First, this court ensures the district court did not procedurally err by, for instance, miscalculating the Guidelines. *Id.* Second, the court reviews the sentence for substantive reasonableness under an abuse of discretion standard. *Id.* Flores challenges only the accuracy of the district court's Guidelines calculations, so our analysis focuses on the first step. We accept the district court's findings of fact unless they are clearly erroneous and "give due deference to the district court's application of the [G]uidelines to the facts." *United States v. McCants*, 554 F.3d 155, 160 (D.C. Cir. 2009) (cleaned up).

Flores contends that the district court erred in adopting a Guidelines total offense level of 43 by (1) attributing to Flores the total amount of drugs Los Zetas imported to the United States while he worked for the cartel; (2) applying an enhancement for a managerial role; and (3) applying enhancements related to Flores' criminal conduct occurring in Mexico. We find no reversible error in the district court's calculation of Flores' sentence.

## A.

Flores first argues the district court erred when it attributed to him the total amount of drugs Los Zetas trafficked to the United States during his roughly fifteen months working for the cartel.

A court determines a defendant's base offense level by examining his "[r]elevant [c]onduct." U.S.S.G. § 1B1.3 (2018). Where there is "jointly undertaken criminal activity"—such as a criminal enterprise—an individual defendant is accountable for the conduct of others that was "within the scope of," "in furtherance of," and "reasonably foreseeable in

connection with that criminal activity." *See id.* § 1B1.3(a)(1)(B) & app. n.3.

Here, Flores pled guilty to participating in a drug trafficking conspiracy that spanned from November 2009 through February 2011 and involved multiple acts of importing five kilograms or more of cocaine into the United States. Flores admitted that when he began working for Los Zetas, he knew it was a criminal organization dedicated to drug trafficking and the transshipment of drugs. Likewise, in the statement of facts accompanying his guilty plea, Flores admitted knowing that Los Zetas imported massive quantities of cocaine into the United States, and that the cartel was responsible for transporting multi-ton quantities of cocaine and marijuana each month to the United States. Flores further admitted he engaged in acts of violence and intimidation to maintain the cartel's territory—including its drug smuggling routes to the United States. Based on these admissions, the district court did not clearly err when determining the drug quantity attributable to Flores. *See United States v. Santos*, 357 F.3d 136, 141 (1st Cir. 2004) (explaining the sentencing court was entitled to rely on concessions defendant made when pleading guilty in determining drug quantity attributable to him); *see generally Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (stating that facts acknowledged during guilty plea proceedings have a "strong presumption of verity").

In arguing that the district court erred in determining the drug quantity for which he was responsible, Flores focuses on the meaning of "jointly undertaken criminal activity" in U.S.S.G. § 1B1.3(a)(1)(B). He maintains that he had no agreement relating to the importation of drugs and had no direct role in any of the drug trafficking transactions. Yet courts have often attributed to enforcers the entire drug quantity that passes through a conspiracy while they were participants in the

conspiracy. *See United States v. Gibbs*, 190 F.3d 188, 214 (3d Cir. 1999) (collecting cases); *see also United States v. Laureano-Pérez*, 797 F.3d 45, 81 (1st Cir. 2015) (finding that the organization's enforcer could "reasonably have anticipated" the quantity of drugs involved and that there was no error in attributing the entire amount trafficked by the conspiracy to him) (cleaned up). Flores admitted using violence and intimidation to protect lucrative drug trafficking routes from Mexico to the United States in exchange for a monthly salary. The cartel earns money by trafficking drugs, so even if he did not personally traffic drugs to the United States, his argument that he did not receive proceeds from drug trafficking is unpersuasive.

Undeterred, Flores argues that "[t]he law in this Circuit does not permit a district court, for sentencing purposes, to attribute to an individual defendant the quantity of drugs attributable to the conspiracy as a whole." Flores Br. 41. Yet none of the cases Flores cites prohibits such an attribution when a district court determines it is warranted. *See, e.g.*, *United States v. Saro*, 24 F.3d 283, 288–90 (D.C. Cir. 1994); *Gibbs*, 190 F.3d at 214–15. In fact, in *Saro*, a case on which Flores heavily relies, this court explained that "[i]n some conspiracies, of course, each participant has joined (implicitly or explicitly) in the overall scheme, so that the scope of the conspiracy is identical for each," 24 F.3d at 289 (emphasis omitted), meaning the district court has authority to attribute the total amount of drugs involved in the conspiracy to each defendant. Here, the co-conspirators joined an "overall scheme" to traffic drugs into the United States. As a lookout, Flores reported on the movement of rival cartels and law enforcement, which facilitated drug trafficking. As a hitman and commander, Flores used violence and intimidation to keep the drug routes open for transport. It follows that Flores was part of the "overall scheme" of the conspiracy and that the district court reasonably

attributed to Flores the total amount of drugs he conceded Los Zetas trafficked into the United States during the time he served in those positions.[3]

We find that the district court did not commit reversible error in determining the drug quantity for which Flores was responsible.[4]

## B.

Second, Flores argues the district court erred in enhancing his offense level by two points based on his role in the RICO conspiracy. We disagree. This two-point enhancement applies if the defendant was an "organizer, leader, manager, or supervisor" of the criminal activity. U.S.S.G. § 3B1.1(c). "[P]ersons receiving an enhancement under § 3B1.1 must exercise some control over others." *United States v. Wilson*, 605 F.3d 985, 1037 (D.C. Cir. 2010) (per curiam) (cleaned up).

---

[3] "[T]he role of enforcer is often central to the viability of the drug conspiracy, which perforce exists in a dangerous environment," but "there may be different types of enforcers in a conspiracy" to whom different amounts of drugs may be attributed. *Gibbs*, 190 F.3d at 214. Thus, although the entire drug quantity that passed through a conspiracy may not be attributable to every enforcer, based on Flores' admissions in the statement of facts accompanying his guilty plea, the district court did not clearly err in attributing such a quantity to him for the duration of his participation in the conspiracy.

[4] Flores also cursorily argues the district court erred by imposing a two-point enhancement for methamphetamine importation because Flores "did not … have anything to do with that." Flores Br. 33. But in the statement of facts supporting his guilty plea, Flores admitted he was aware the cartel imported methamphetamines into the United States, and—as discussed—that his role was to keep the Mexico-United States drug smuggling routes open. The district court did not err in imposing the two-point enhancement.

Although "[a]n enhancement under § 3B1.1 must be supported by the preponderance of the evidence, … such evidence may be circumstantial." *United States v. Graham*, 162 F.3d 1180, 1183 (D.C. Cir. 1998) (cleaned up).

Flores argues that the presentence report focuses on his role as a hitman—which is generally not a supervisory role—and that the report did not describe whom he allegedly supervised. Although Flores admits the report recognizes that he served as the commander of a hit squad, he argues this was not the district court's stated reason for the role enhancement.

At the resentencing hearing, however, the district court made clear that the two-point enhancement for a supervisory role was imposed based on Flores' role as a commander. The district court adopted the presentence report without much additional explanation. When discussing the enhancement, the district court referred to Flores' role as a hitman and a commander, but ultimately focused on Flores' position of authority vis-à-vis other members of his hit squad, thus tying the enhancement to Flores' role as a commander.

Moreover, a preponderance of the evidence shows Flores had a supervisory role in which he exercised some control over others. For instance, Flores acknowledges he served as a commander. Flores described the role of a commander in detail in his testimony at the *Garcia Sota* trial, explaining that commanders decided what vehicles to hijack for Los Zetas to use; determined when hit squad members could leave and return to their squads; and summoned hit squad members for cartel meetings. In addition, Flores acknowledged that, during his time as a commander, his hit squad collected "taxes" from Los Zetas controlled junk yards and drug houses. These facts

demonstrate that Flores—even if for a brief time[5]—held a supervisory role with the authority to direct others, which distinguishes his role from less-culpable participants. *See, e.g.*, *Wilson*, 605 F.3d at 1038 (upholding application of an enhancement in a drug conspiracy case where the defendant directed the activity of "foot soldiers" and was considered a leader by crew members).[6] We conclude the district court did not commit reversible error in applying the two-point supervisory role enhancement.

## C.

Finally, Flores argues the district court erred by considering his criminal conduct in Mexico when imposing a two-point enhancement for his use of "threats and violence," U.S.S.G. § 2D1.1(b)(2), and a two-point enhancement for physical restraint of a victim, *id.* § 3A1.3. Because his acts of violence were all committed in Mexico against Mexican victims, Flores asserts they did not relate to Los Zetas'

---

[5] Flores relies on the fact he was demoted to a hitman after his arrest, but that does not negate his service as a commander for a couple of weeks. The Guidelines provide no minimum amount of time a defendant must serve in a supervisory role to qualify for the enhancement. *See* U.S.S.G. § 3B1.1(c).

[6] To support his argument that the district court erred in applying this two-point enhancement, Flores also points to seemingly contradictory language in the revised presentence report suggesting the enhancement was imposed based on his non-supervisory role as a hitman. But Flores did not raise this argument in the district court at resentencing, so it is forfeited. In any event, although the district court adopted the presentence report "as written," Supp. App. 76, during resentencing the district court also adopted the government's argument that the enhancement was appropriate based on Flores' role as a commander. The defense made no objection that such a finding would be inconsistent with the presentence report.

conspiracy to traffic drugs into the United States, and therefore the district court cannot consider them as "relevant conduct" for the RICO conspiracy. Relying on the reasoning of *Flores I*, in which the court held that the murder of a Mexican national in Mexico could not be used when calculating Flores' base offense level, 912 F.3d at 621–22, Flores maintains that the district court erred in considering his other criminal conduct perpetrated in Mexico when it recalculated his sentence.

In *Flores I*, this court held that "the relevant conduct Guidelines cannot be used to calculate the base offense level of an act that does not qualify as 'racketeering activity.'" 912 F.3d at 621. We therefore consider whether Flores' underlying conduct qualifies as "racketeering activity." *Id.* (citing U.S.S.G. § 2E1.1(a)(2)); *see also RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016) ("[RICO] predicates include any act 'indictable' under specified federal statutes, … and any offense involving … drug-related activity that is 'punishable' under federal law."). In resentencing Flores, the district court focused on activity that qualifies as "racketeering activity." Specifically, Flores' sentence was based on his guilty plea to a RICO conspiracy charge where the pattern of racketeering activities included conspiracy to import into the United States substantial quantities of cocaine and marijuana in violation of federal law. *See* 21 U.S.C. § 952 (prohibiting importation of controlled substances into the United States); *id.* § 963 (applying the same punishment for conspiracy to commit the same). Flores admitted to "kidnap[p]ing, assault, attempted murder, and murder as a means of protecting the … lucrative drug distribution routes from Mexico to the United States." App. 57. Flores also admitted he "carried out various acts of violence and intimidation on behalf of [Los Zetas] against Mexican law enforcement officers and rival drug cartel members for the purpose of maintaining control over the … drug smuggling

routes to the United States." App. 38–39. Thus, Flores' guilty plea effectively concedes that his violent conduct was related to the drug smuggling conspiracy and therefore was racketeering activity.

The grounds for finding error in *Flores I* are not present here because the relevant conduct used to calculate Flores' base offense level was racketeering activity. In light of Flores' admission that he committed kidnappings, murders, and numerous other violent crimes to protect Los Zetas' Mexico-United States drug trafficking routes, the district court did not commit reversible error in imposing a two-point enhancement for the use of threats and violence and a two-point enhancement for the use of physical restraints. *See id.* § 1B1.3(a), (a)(1)(A) (explaining that "specific offense characteristics" and "adjustments" "shall be determined on the basis of … all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant").

In sum, we affirm the district court's calculation of Flores' sentence for the RICO conspiracy.

### III.

Flores also argues that we should vacate his convictions for accessory after the fact to the murder and attempted murder of U.S. officials under Section 1114. Because Section 1114 does not apply extraterritorially, as *Garcia Sota* recognized, Flores maintains that the district court erred in convicting him under that statute for crimes committed in Mexico. The government responds that Flores forfeited this argument by failing to raise it on direct appeal. Because we find plain error in this case, we conclude that Flores' convictions under Section 1114 must be vacated.

14

In general, an appellant who fails to raise an available issue in an initial appeal may not raise that claim in a second appeal after remand because such claims are forfeited. *See, e.g.*, *United States v. Saani*, 794 F.3d 44, 48 (D.C. Cir. 2015). Absent plain error, we will not vacate or reverse in a second appeal based on an argument that could have been, but was not, raised in a first appeal. *Id.* Under Federal Rule of Criminal Procedure 52(b), "a court of appeals may correct [a forfeited] error" "only if it is plain and affects substantial rights." *United States v. Olano*, 507 U.S. 725, 732 (1993) (cleaned up). "[A]nd the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

As a threshold matter, for Rule 52(b) to apply, there must be an "error." "Deviation from a legal rule is 'error' unless the rule has been waived." *Id.* at 732–33. In this case, there was an error: Flores was convicted on two counts under Section 1114 for conduct that occurred in Mexico, though this court subsequently held that the statute does not apply extraterritorially. *See Garcia Sota*, 948 F.3d at 357. Although Flores pled guilty to these charges, his plea does not constitute a waiver of the legal rule under the reasoning in *Class v. United States*, 138 S. Ct. 798, 805–06 (2018). In *Class*, the Supreme Court held that "a guilty plea by itself [does not] bar[] a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." *Id.* at 803. The underlying rationale of the *Menna-Blackledge* doctrine— which the Court applied in *Class*—also applies here. *See id.* at 803–04 (citing *Menna v. New York*, 423 U.S. 61, 63 & n.2 (1975) (per curiam); *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)). That doctrine provides "that a guilty plea does not bar a claim on appeal where on the face of the record the court had no power to enter the conviction or impose the sentence." *Class*, 138 S. Ct. at 804 (cleaned up). In light of this court's

decision in *Garcia Sota*, it is now clear that the court had no power to convict and sentence Flores under Section 1114 because the underlying conduct occurred in Mexico. Because extraterritorial application of Section 1114 was an error, and Flores' guilty plea does not bar his claim on appeal, we proceed under the Rule 52(b) plain error framework.

We next consider whether the error was "plain," which may be apparent only on appeal. *See Henderson v. United States*, 568 U.S. 266, 279 (2013) (concluding that "whether a legal question was settled or unsettled at the time of trial, it is enough that an error be plain at the time of appellate consideration") (cleaned up). At the time of Flores' trial and first appeal, the extraterritorial application of Section 1114 was an unsettled question in this circuit. After *Garcia Sota*, however, it is now clear that Section 1114 has no extraterritorial application, so the district court's error is plain.

Third, the error must "affect[] substantial rights." FED. R. CRIM. P. 52(b). The Supreme Court has explained that "[i]n most cases," affecting the defendant's substantial rights "means that the error must have been prejudicial," and also that some errors may be "presumed prejudicial." *Olano*, 507 U.S. at 734–35. Prejudice exists where the error "affected the outcome of the district court proceedings." *Id.* at 734. Flores argues the Section 1114 convictions affect his substantial rights because he "stands convicted of two crimes for which the government lacked the power to constitutionally prosecute him." Flores Br. 39. The district court's error of applying Section 1114 extraterritorially "affected the outcome of the district court proceedings" because Flores would not have been convicted under Section 1114. *Olano*, 507 U.S. at 734.

Although vacating the Section 1114 convictions would not directly reduce Flores' prison sentence,[7] the convictions have other consequences, including that Flores remains responsible for a $100 special assessment for each of the two Section 1114 convictions. The dissent dismisses these special assessments as mere "trifles," Dissenting Op. 3, but the modest sums nonetheless constitute punishments. *See Rutledge v. United States*, 517 U.S. 292, 301 (1996) (holding that a second conviction that carries with it a special assessment "amount[s] to a second punishment").

Furthermore, the erroneous convictions also affect Flores' substantial rights because they have "potential adverse collateral consequences that may not be ignored." *Ball v. United States*, 470 U.S. 856, 865 (1985); *see also Rutledge*, 517 U.S. at 302–03 (reaffirming *Ball*). For example, Flores would continue to have two very serious convictions on his record (accessory to murder and to attempted murder), which would affect his criminal history category and thus his sentence if he is convicted of any future offenses. *See Ball*, 470 U.S. at 865. Even if Flores is charged but not convicted of a future offense, a judge may consider his criminal history when deciding whether to grant bail pending trial, which would affect his liberty. The convictions may also "be used to impeach [Flores'] credibility and certainly carr[y] the societal stigma accompanying any criminal conviction." *Id.*

Thus, even though the convictions do not affect the length of the current sentence, they infringe Flores' liberty and constitute "an impermissible punishment." *Id.*; *see also United*

---

[7] Flores concedes that "if this Court affirms the district court's determination [of] the offense level for the RICO conspiracy," which we do, *see supra* Part II, then the other two convictions "add nothing to the sentence." Flores Reply Br. 6.

*States v. Tann*, 577 F.3d 533, 539–40 (3d Cir. 2009) ("Following *Ball* and *Rutledge*, numerous courts of appeals … have concluded that a defendant's substantial rights are affected by the additional, unauthorized conviction, even when the immediate practical effect may not increase the defendant's prison term, or may only be a negligible assessment."); *id.* at 539 n.7 (collecting cases).[8] The erroneous convictions affect Flores' substantial rights by leaving in place the special assessments and subjecting him to the collateral consequences of two serious criminal convictions.[9]

Finally, because Rule 52 is "permissive, not mandatory," we must consider "whether the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Henderson*, 568 U.S. at 272 (cleaned up). "An error may seriously affect the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Olano*, 507 U.S. at 736–37 (cleaned up). As

---

[8] Contrary to the dissent's implication, we have never held that a reduction in sentence is the only way to demonstrate that an error affects substantial rights. While it is true that Flores does not elaborate on the specific prejudicial effects of his erroneous conviction, the dissent correctly notes that this court "indisputably" has authority to identify and correct plain error sua sponte. Dissenting Op. 8 n.10 (citing cases).

[9] The dissent focuses on the counterfactual that Flores would have pled guilty to other equally serious crimes and thus, as with errors under Federal Rule of Criminal Procedure 11, Flores must satisfy the "special requirement" of showing "a reasonable probability that, but for the error, he would not have entered the plea." Dissenting Op. 4 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)). The plain error in this case, however, relates not to the Rule 11 procedures for accepting a plea, but rather the distinct error of convicting a person under a statute that does not apply to the underlying conduct.

discussed, vacatur will not decrease Flores' sentence, but the erroneous convictions have the type of potential adverse consequences recognized by the Supreme Court as additional punishments, which in turn seriously affect the fairness of the judicial proceedings. In addition, because it is now plain that courts in this circuit lack the power to convict and punish Flores under Section 1114 for extraterritorial conduct, it would seriously affect the integrity and public reputation of the courts to nonetheless affirm such convictions and punishments.

When determining whether to exercise our discretion to address an issue that could have been raised in an initial appeal, we have considered whether there is an "exceptional circumstance[], where injustice might otherwise result." *See United States v. Henry*, 472 F.3d 910, 913 (D.C. Cir. 2007) (per curiam) (cleaned up); *see also United States v. Brice*, 748 F.3d 1288, 1289 (D.C. Cir. 2014). And "we have suggested that an intervening change in the law can constitute an exceptional circumstance." *Henry*, 472 F.3d at 914 (cleaned up). Here, there was an intervening change in the law—this court decided *Garcia Sota* after the district court had resentenced Flores. "[I]njustice might otherwise result" if Flores continues to be punished for conduct that does not constitute a crime pursuant to the law under which he was convicted. *Id.* at 913 (cleaned up). Placing our imprimatur on an erroneous conviction would cause a "reasonable citizen" to take a "diminished view of the judicial process and its integrity." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018) (cleaned up).[10]

---

[10] The dissent's reliance on an unpublished decision involving another Los Zetas cartel member involved in the same attack is misplaced. Dissenting Op. 8 (citing *United States v. Zapata Espinoza*, 830 F. App'x 324 (D.C. Cir. 2020) (per curiam)). Plain error review must be "case-specific" and "fact-intensive." *Puckett v. United States*, 556 U.S. 129, 142 (2009). While Zapata Espinoza was

With no mention of the plain error analysis, the government maintains that Flores forfeited his argument by failing to raise it in the district court and therefore we cannot consider his claims here. Instead, the government states that Flores must first bring his claim in the district court pursuant to 28 U.S.C. § 2255 and show "he is innocent of both the charges related to [Section] 1114 and other, more or equally serious charges that the government forewent during the course of plea negotiations." Gov't Br. 32. The government relies on *Bousley v. United States*, 523 U.S. 614 (1998), which established that, in the context of habeas proceedings, "where the [g]overnment has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Id.* at 624. But this is not a habeas proceeding, and the government does not address why the plain error framework should not apply to Flores' appeal of the district court's resentencing. Under the plain error analysis, Flores is not required to show actual innocence to secure a remedy. *See Olano*, 507 U.S. at 736–37 ("[W]e have never held that a Rule 52(b) remedy is *only* warranted in cases of actual innocence. Rather, … [a]n error may 'seriously affect the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence."). Nothing in *Olano* requires that we consider foregone charges when determining whether an error is plain and affects substantial rights.

Because we find a plain error occurred, we consider Flores' forfeited argument challenging his convictions under Section 1114. Addressing the merits of that argument is

involved in the same attack on U.S. agents and was convicted under, *inter alia*, Section 1114, he brought a different procedural challenge to his sentence and did not raise the extraterritorial reach of Section 1114. The failure of the court to sua sponte identify and correct the potential *Garcia-Sota* error in *Zapata Espinoza* does not undercut the identification of error in this case.

straightforward: We vacate Flores' two convictions under Section 1114 because that statute does not apply extraterritorially.

* * *

For the reasons stated above, we affirm the district court's sentencing with respect to Flores' conviction for RICO conspiracy and vacate Flores' two convictions under Section 1114. We remand for a limited resentencing in which the district court may determine whether to modify its sentence in light of our vacatur.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*, dissenting in part,

Pursuant to a negotiated agreement in 2011, Flores pled guilty to a three-count information. He is now before our court for the second time. The court affirms his sentence on count 1 (RICO), a result with which I agree. But I do not agree with the court's decision to vacate his convictions on count 2 (accessory after the fact to the murder of a U.S. officer) and count 3 (accessory after the fact to the attempted murder of a U.S. officer).

The majority opinion speaks of "injustice," of the "integrity and public reputation of judicial proceedings," of "fairness." Majority Op. 14, 18. I speak not only of Flores' failure to raise any of the legal points my colleagues now find persuasive, but also of the murders he committed, of the people he tortured, and of the other atrocities he committed while working for a Mexican cartel that smuggled illegal drugs into the United States. An Addendum to this opinion, consisting of an excerpt of Flores' testimony, gives a general description of his activities. Other parts of the record contain details, but they are unnecessary to recount. This case is not an academic exercise.

The murder and the attempted murder mentioned in the information occurred in Mexico, as did Flores' participation. The officers who were ambushed were Special Agents of U.S. Immigration and Customs Enforcement. The original indictment — superseded by the information to which Flores pled guilty — contained four counts.

The original indictment's first two counts were the same as counts 2 and 3 of the superseding information. Those counts charged Flores under 18 U.S.C. § 3 (accessory) and § 1114 (murder and attempted murder of a U.S. officer). The other two counts in the indictment charged Flores as an accessory after the fact to the attempted murder of one of the officers, in violation

of 18 U.S.C. §§ 3, 1116(a),[1] and as an accessory after the fact to the use of a firearm during the murder and attempted murder of the officers, in violation of 18 U.S.C. § 3 and 18 U.S.C. §§ 924(c)[2] and 924(j)(1).[3]

After Flores pled guilty to the information and the district court sentenced him, he appealed to this court. Our court vacated his sentence and remanded for resentencing.[4] The district court sentenced him again, and then, in a separate case, another panel of our court heard the appeal of two of the triggermen in the murder and attempted murder. That panel, disagreeing with other circuits, ruled that § 1114 does not apply outside U.S. territory. *United States v. Garcia Sota*, 948 F.3d 356, 357 (D.C. Cir. 2020).

Flores then perfected his second appeal to this court, arguing that his convictions on counts 2 and 3 for violating § 1114 should be vacated. Flores never raised this issue before the district court on sentencing or resentencing, or in our court in his first appeal.

---

[1] This section makes it a criminal offense to "kill[] or attempt to kill a[n] . . . internationally protected person[.]" One of the officers fit that designation.

[2] This provision applies to "crime[s] of violence or drug trafficking[,]" including murder and attempted murder.

[3] This provision makes it a criminal offense to kill a person with a firearm while committing a crime of violence. The murdered officer was shot by Flores' fellow members of the cartel's hit squad.

[4] Flores' first appeal dealt with how the district court calculated his sentence. *United States v. Flores*, 912 F.3d 613 (D.C. Cir. 2019).

My colleagues therefore rest their decision to vacate his convictions on Federal Rule of Criminal Procedure 52(b) — the "plain error" rule.

Under this rule, Flores had "the burden of persuasion with respect to prejudice." *United States v. Olano*, 507 U.S. 725, 734 (1993). He did not carry that burden. In neither his opening brief nor his reply brief did he even make the attempt. Yet for some unstated reason, the court steps in and tries to cure his omission. The court's effort on his behalf is of doubtful propriety. It is also unpersuasive.

Flores admits, and the court acknowledges, that vacating his § 1114 convictions would have no effect whatsoever on his sentence. As to any other possible prejudicial effect of these two convictions, Flores is — as I have said — silent.

In its effort to fill the gap, the court offers two considerations. The first is that Flores was subject to a pair of $100 special assessments on the two § 1114 counts. Flores agreed to pay the $200 *before* he was even sentenced. Whether he ever paid them is unclear. But it hardly matters. There is a legal doctrine that takes care of a situation such as this: "*de minimis non curat lex*" — the law does not concern itself with trifles. No wonder Flores did not bother to mention the special assessments.[5]

The court's other idea, again not one Flores endorsed, is that his § 1114 convictions would "affect his criminal history category" when "he is convicted of any future offenses."

---

[5] It also comes as no surprise that Flores did not allege a possible effect on his parole eligibility. The Sentencing Reform Act of 1984, Pub. L. No. 98-473, ch. II, eliminated parole for federal defendants convicted of crimes committed after November 1, 1987.

Majority Op. 16. Is Flores planning "any future offenses"? We certainly hope not. So where does the court come up with this notion? Nowhere. It is fiction. To the extent anything in the record bears on the court's speculation, it is this: when Flores finishes his sentence, he will be immediately deported to Mexico. App. 32; s*ee* 8 U.S.C. §§ 1226(c)(1)(B), 1227(a)(2)(A)(iii), 1228(a). It is not apparent why, if Flores commits future offenses in his home country, his "criminal history category" under the U.S. Sentencing Guidelines would matter.

More important still, the Supreme Court has laid down a special requirement for plain error–guilty plea cases such as this one: "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that but for the error, he would not have entered the plea."[6] *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004); *accord Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904-05 (2018); *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016).

Neither Flores nor my colleagues make any effort to satisfy the *Dominguez Benitez* requirement. That is understandable.

---

[6] The court claims that there was no error in "the Rule 11 procedures for accepting a plea, but rather the distinct error of convicting a person under a statute that does not apply[.]" Majority Op. 17 n.9. Those are one and the same. As settled long ago, Rule 11 "is designed 'to protect a defendant who is in the position of pleading voluntarily . . . but without realizing that his conduct does not actually fall within the charge.'" *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (quoting Fed. R. Crim. P. 11 advisory committee's note to 1966 amendments); *see also United States v. Melgar-Hernandez*, 832 F.3d 261, 264–66 (D.C. Cir. 2016).

Flores could not possibly meet the Supreme Court's test. In pleading guilty to the § 1114 charges, Flores established beyond any doubt that he was guilty of the equally serious § 924 and § 1116 charges in the original indictment.[7] The government forewent those charges as part of the negotiated plea agreement. *Cf. Bousley v. United States*, 523 U.S. 614, 624 (1998); *see also United States v. Baxter*, 761 F.3d 17, 28 (D.C. Cir. 2014); *United States v. Caso*, 723 F.3d 215, 219 (D.C. Cir. 2013); *United States v. Knight*, 981 F.3d 1095, 1116 (D.C. Cir. 2020) (Katsas, J., dissenting in part) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 362 (1978)); *Lewis v. Peterson*, 329 F.3d 934, 936 (7th Cir. 2003).

It follows that even if the § 1114 charges were taken off the table, Flores has not shown, indeed has not even attempted to show, a "reasonable probability" that he would not have pled guilty to being an accessory to the murder and attempted murder. *Dominguez Benitez*, 542 U.S. at 83. All indications point in the opposite direction. If he could not have pleaded to § 1114 with respect to the murder and attempted murder, he would have pleaded to the other two, equally serious charges stemming from his actions as an accessory in the gunning down of the ICE officers.

But assume that Flores had carried his burden of showing prejudice and that he had established that but for the error regarding § 1114, he would not have pled guilty to accessory charges involving the murder and the attempted murder. Even

_____

[7] The government's brief, 32–33, explains this point in detail. Flores, in his reply brief, did not dispute the government's contention that his factual admissions made out violations of the other two charges in the indictment. Both of these other charges applied beyond U.S. territory. *United States v. Garcia Sota*, 948 F.3d 356, 358, 362 (D.C. Cir. 2020).

so, the court still had to decide whether to exercise its Rule 52(b) discretion in his favor. *See Henderson v. United States*, 568 U.S. 266, 272 (2013); *Johnson v. United States*, 520 U.S. 461, 469–70 (1997). Yet the court fails to give any satisfactory explanation about why Flores is entitled to its dispensation.

"This is said to be a motion to the *discretion* of the court. This is true. But a motion to its *discretion* is a motion, not to its *inclination*, but to its *judgment*; and its judgment is to be guided by sound legal principles." *United States v. Burr*, 25 F. Cas. 30, 35 (C.C. Va. 1807) (No. 14692D) (Marshall, C.J.) (emphasis added).

One such legal principle, ignored here by the court and Flores, is this: "the fact that a defendant did not object, despite unsettled law, may well count against the grant of Rule 52(b) relief." *Henderson*, 568 U.S. at 278–79.

Our circuit had not decided the territorial scope of § 1114 until *Garcia Sota*, 948 F.3d at 357. So one may say, as the court did here, that the issue was until then "unsettled" — at least in this circuit. Majority Op. 15.[8] Flores must have made a deliberate and calculated decision not to contest the

_____

[8] Even after the *Garcia Sota* decision, the § 1114 issue remains "unsettled." The Supreme Court in *Henderson*, 568 U.S. at 278–79, ruled that Rule 52(b) may apply when the law became "settled" while the case was on appeal. By "settled" the *Henderson* Court meant that an intervening Supreme Court decision rendered the district court's ruling retroactively erroneous. *Id.* at 270. With respect to the reach of § 1114 there has been no such Supreme Court decision and federal law on the issue is by no means "settled." Two circuits disagree with this court's decision in *Garcia Sota* and hold that § 1114 applies beyond the sovereign territory of the United States. *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011); *United States v. Benitez*, 741 F.2d 1312, 1317 (11th Cir. 1984).

applicability of § 1114. The defendants in *Garcia Sota* were two of the triggermen in the crimes to which Flores was an accessory. They argued unsuccessfully in the district and successfully in our court that § 1114 does not apply in Mexico. Flores testified against them at their trial. And yet Flores did not present this argument until his second appeal.[9]

A second omitted principle is the doctrine of invited error. "If a defendant invites error by the district court, he is 'barred from complaining about it on appeal.'" *United States v. Ginyard*, 215 F.3d 83, 88 (D.C. Cir. 2000) (quoting *United States v. Harrison*, 103 F.3d 986, 992 (D.C. Cir. 1997)). The court seems to rest the error with the district court's acceptance of the plea. But it was Flores who *negotiated* this guilty plea with the advice of counsel. He affirmed that "[he] fully [understood] this Plea Agreement and voluntarily agree[d] to it." App. 34. Flores, at least partially, invited this error.

Yet another principle results from the fact that this is Flores' second appeal. The principle is this: "absent exceptional circumstances," the court will not address an argument that could have been raised during the initial appeal. *United States v. Brice*, 748 F.3d 1288, 1289 (D.C. Cir. 2014); *United States v. Henry*, 472 F.3d 910, 913 (D.C. Cir. 2007); *Laffey v. Nw.*

---

[9] Garcia Sota first challenged the extraterritoriality of § 1114 in April 2017, six months before Flores filed his first sentencing memorandum. Dkt. 23, *United States v. Garcia Sota*, 1:13-cr-00142-RCL-1 (D.D.C. Apr. 18, 2017). Garcia Sota raised the issue again on appeal in June 2019, six months before Flores filed his second sentencing memorandum on remand. Appellant Br., *Garcia Sota* (June 11, 2019). And even four years before that, another defendant raised the question in *United States v. Abu Khatallah*, 151 F. Supp. 3d 116, 130–31 (D.D.C. 2015). Whereas Garcia Sota sought "to preserve [his] rights with respect to this issue," Flores did nothing. Dkt. 23, *United States v. Garcia Sota*, 1:13-cr-00142-RCL-1 at *1.

*Airlines, Inc.*, 740 F.2d 1071, 1089–90 (D.C. Cir. 1984) (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) (Friendly, J.)). There are no "exceptional circumstances" here. As previously mentioned, Flores made a strategic decision to not raise this issue. This is not a case "where injustice might otherwise result[.]" *Henry*, 472 F.3d at 913 (quoting *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 740 (D.C. Cir. 1995)) (internal quotation marks omitted).

Consider how our court handled the appeal of another member of Flores' cartel hit squad. A week after oral argument in this case, a different panel of this court — a panel that included a member of today's majority — denied the appeal of one of the triggermen who pled guilty to two counts under § 1114. *United States v. Zapata Espinoza*, 830 F. App'x 324 (D.C. Cir. 2020) (per curiam). Zapata Espinoza is serving a thirty-five-year sentence for those convictions. *Id.* at 325. As that panel noted: "[t]here is no question that a thirty-five-year sentence is long, but the acknowledged crime was also indisputably heinous. Under the law and in context of sentences imposed on other defendants for similar crimes, the sentence is not 'fundamentally unfair'" *Id.* at 326 (citation and internal quotation marks omitted). And the panel stated that its "own review of the record in its entirety [does not] reveal any error committed here that amounts to a miscarriage of justice requiring nonenforcement of the appeal waiver."[10] *Id.*

---

[10] Almost a year earlier, *Garcia Sota*, 948 F.3d at 357, held that § 1114 does not apply outside U.S. territory. Despite its "review of the record in its entirety[,]" which plainly reveals the extraterritorial nature of Zapata Espinoza's convictions, the panel did not exercise its discretion to vacate the § 1114 convictions for plain error — something the panel indisputably had the authority to do sua sponte. *Zapata Espinoza*, 830 F. App'x at 326; *see Silber v. United States*, 370 U.S. 717, 717–18 (1962) (per curiam); *United States v. Atkinson*,

To sum up, Flores did not carry his burden of showing prejudice, and he gave no reason for the court to exercise its discretion.  By any measure, he was an accessory after the fact to the murder and attempted murder of two U.S. officers in Mexico.  If § 1114 did not apply, § 924 and § 1116 did.  *Garcia Sota*, 948 F.3d at 358, 362, so held with respect to two of the trigger men.  For that reason and others, there should be no hand-wringing about Flores' pleas of guilty to § 1114.

---

297 U.S. 157, 160 (1936); *United States v. Baugham*, 449 F.3d 167, 170 (D.C. Cir. 2006).

**ADDENDUM**

Transcript of Flores' Testimony, Supp. App. 17–18:

Q: You previously told us about some violent crimes that Sicarios commit on behalf of the cartel. Did you, while you were a Sicarios [sic], personally take part in some of those violent crimes?

A: Yes, that's right.

Q: Let me ask you some specific questions. Have you participated in and conducted kidnappings?

A: Yes, ma'am.

Q: Have you abused or tortured any of the individuals that you had kidnapped or had in your custody?

A: Yes, that's right.

Q: Have you personally committed executions on behalf of the cartel?

A: Yes, I did that.

Q: And have you also participated in destroying and hiding the remains of victims who have been killed by the cartel?

A: I did not understand your question fully. Can you please repeat it?

Q: Have you personally participated in hiding or destroying the remains of bodies of people who have been killed by the cartel?

A: Yes, that's right.